## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>Joseph C. Rallo,<br><br>                    Debtor | Chapter 11<br><br>Case No. 21-20135 |

### ORDER DENYING MOTION FOR CONTINUATION OF THE AUTOMATIC STAY

The Debtor commenced this chapter 11 case on June 2, 2021. Because the Debtor's prior chapter 13 case was dismissed several months before the petition date in this case, the automatic stay will, unless extended, terminate on July 6, 2021. *See* 11 U.S.C. § 362(c)(3)(A); *see also* Fed. R. Bankr. P. 9006(a)(1). In anticipation of this looming loss of the stay, the Debtor filed a Motion for Continuation of the Automatic Stay under 11 U.S.C. § 362(c)(3)(B) [Dkt. No. 5] (the "Motion"). In the Motion, the Debtor states:

> *Since the voluntary dismissal of the prior case*, the Debtor's business and income has improved and are more constant, his family life has improved, his wife is helping with the business, and he has a better handle on business operations. In Debtor's previous case, he did not have the bookkeeping support he needed to effectively run his business and he was overwhelmed with both business and personal responsibilities.

Dkt. No. 5, ¶ 3(B) (emphasis added). During the hearing on June 24, 2021, the Debtor reported that his average monthly gross business income had increased from about $30,000 per month in 2020 to about $46,000 per month in 2021. When asked whether business had improved substantially between March 17, 2021 (when the prior chapter 13 case was dismissed) and June 2, 2021 (when this chapter 11 case started), the Debtor was unsure.

Creditors Tammy and Rick Petrucci object to the Motion, asserting that this chapter 11 case is presumptively not filed in good faith under 11 U.S.C. § 362(c)(3)(C)(i)(III)(bb). *See* Dkt. No. 17. At the hearing, creditor William Morris joined in the Petruccis' objection based on the

amount of time and money he spent participating in the Debtor's unsuccessful chapter 13 case. The Petruccis indicated that they too had participated in the prior case, filing an adversary proceeding and securing a stipulated judgment that their claim, in the amount of $5,225, was nondischargeable. *See* AP No. 19-2011, Dkt. No. 5. A review of the docket reveals that Mr. Morris also filed an adversary proceeding against the Debtor in the prior chapter 13 case and secured a stipulated judgment that his claim, in the amount of $28,000, was nondischargeable and would be repaid on certain terms through and after the completion of the Debtor's chapter 13 plan. *See* AP No. 19-2012, Dkt. No. 14. The docket further reveals that the Debtor's prior case was not, in fact, voluntarily dismissed, but was instead dismissed on the chapter 13 trustee's request for failure to make payments under the proposed (unconfirmed) chapter 13 plan. *See* Case No. 19-20430, Dkt. Nos. 56 & 79.

During the hearing, the Debtor conceded that this case was presumptively filed not in good faith. However, he emphasized that the improved performance of his business, and optimism about the future prospects of the business, constituted a substantial change in his financial affairs since the dismissal of his prior case sufficient to rebut that presumption. As for the Petruccis' claim, the Debtor was unwilling to say whether the judgment of nondischargeability issued in connection with his prior case would be binding on him in this case. Instead, he pointed out that he had scheduled the Petruccis' claim as a priority claim and was committed to paying all priority claims in full through a plan.

To secure an extension of the stay under 11 U.S.C. § 362(c)(3)(B), the Debtor bears the burden of demonstrating, by clear and convincing evidence, this case was filed in good faith. The Debtor bears this burden because the statute creates a rebuttable presumption that the case was not filed in good faith:

> [F]or purposes of [section 362(c)(3)(B)], a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)—
>
>> (i) as to all creditors, if—
>> . . .
>>
>> (III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded—
>> . . .
>>
>>> (bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed[.]

11 U.S.C. § 362(c)(3)(C). The Code does not specify how a debtor can rebut this presumption. However, the statute does suggest that the Court should consider a debtor's performance in his prior case when evaluating his intentions in a later case. *See, e.g.,* In re Baldassaro, 338 B.R. 178, 188 (Bankr. D.N.H. 2006). In the absence of clear statutory guidance, courts generally consider the totality of the circumstances when assessing good faith. *See* id. When faced with an expiring stay under section 362(c)(3), a debtor cannot establish the requisite good faith simply by expressing a subjective desire to reorganize his financial affairs. The statute commands an objective analysis of whether the debtor is likely to succeed in the later case—an assessment informed, at least in part, by what happened in the prior case. Here, an evaluation of the Debtor's prior case casts doubt on his prospects in this case. And, because the Debtor has not yet filed a plan in this case, the Court has little, if any, evidence by which to evaluate the Debtor's prospects for success in relation to a concrete, forward-looking proposal. To the extent that the allegations in Motion, the Debtor's representations at the hearing, and the schedules and

statements filed in this case and in his prior case can be treated as evidence, that evidence is neither clear nor convincing.[1]

As for the Debtor's claim that his financial circumstances have substantially improved, the Court is unpersuaded. For the 12 months prior to the chapter 11 filing, the average monthly gross income from the business was $30,416. *See* Dkt. No. 1 at 68. The Debtor estimates that, going forward, the average monthly gross income would be $61,540. *See* id. The Debtor offered no explanation for how his wife's increased involvement with bookkeeping or his improved family circumstances would cause or contribute to such a dramatic increase in the gross income. Even so, an increase in the monthly gross income of the Debtor's business does not necessarily translate to an enhanced ability to perform under a confirmed plan. A comparison of the estimated business income and expenses reported in the Debtor's prior chapter 13 case and the estimated business income and expenses reported in this case shows that the Debtor's cost of goods sold has increased substantially since 2019. That increase would offset much of the increased gross income. In any event, the Debtor did not point to evidence showing increased profitability such that one could reasonably expect the payments under a chapter 11 plan to be made, especially given the Debtor's deficient performance in chapter 13. That said, the more revealing comparison is that between the Schedules I and J filed in the prior case and the Schedules I and J filed in this case. Those schedules indicate that: (a) the combined monthly income of the Debtor and his spouse has increased from $7,242 to $7,409 (by $167 per month); (b) his monthly expenses have increased from $6,612 to $6,709 (by $97 per month); and (c) his monthly net income has increased from $630 to $700 (by $70 per month). In evaluating whether the Debtor's financial circumstances have changed, his personal net income matters more than his gross business income because it is his personal income that he could make available to fund

---

[1] The Debtor did not ask for the opportunity to adduce additional evidence in support of the Motion.

- 5 -

a plan. And an increase in monthly net income of only $70 since 2019 can hardly be characterized as a substantial change. The Debtor was unable to keep up with payments under the proposed plan in his prior case, when his monthly net income was comparable to what it is now. His debts have not decreased in the interim; quite the contrary. These observations, culled from the schedules, undermine the Debtor's contention that his financial circumstances have substantially improved in less than three months.

The Debtor has not offered clear and convincing evidence sufficient to rebut the presumption that this case was not filed in good faith. For this reason, his Motion to extend the automatic stay under 11 U.S.C. § 362(c)(3)(B) is hereby DENIED.

Date: July 2, 2021

Michael A. Fagone
United States Bankruptcy Judge
District of Maine